REDACTED

1    IRELL & MANELLA LLP
Morgan Chu (CA 70446) mchu@irell.com
2    Jonathan H. Steinberg (CA 98044) jsteinberg@irell.com
Joseph M. Lipner (CA 155735) jlipner@irell.com
3    Kenneth J. Weatherwax (CA 218612) kweatherwax@irell.com
1800 Avenue of the Stars, Suite 900
4    Los Angeles, CA  90067-4276
Telephone:   (310) 277-1010
5    Facsimile:    (310) 203-7199

6    Attorneys for Defendant Tessera, Inc.

7

8             UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10             OAKLAND DIVISION

11

| | |
|---|---|
| | Case No. C 10-00945 CW |
| 12 POWERTECH TECHNOLOGY INC., | **[REDACTED] DEFENDANT TESSERA, INC.'S NOTICE OF** |
| 13            Plaintiff, | **MOTION, MOTION AND MEMORANDUM OF POINTS AND** |
| 14      v. | **AUTHORITIES IN SUPPORT OF TESSERA'S MOTION TO DISMISS** |
| 15 TESSERA, INC., | **FOR LACK OF SUBJECT MATTER JURISDICTION** |
| 16         Defendant. | **[CIVIL LOCAL RULE 7-2]** |
| 17 | Date:          May 6, 2010 |
| 18 | Time:         2:00 p.m. |
| | Ctrm:        Courtroom 2, 4th Floor |

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

DEFENDANT TESSERA INC.'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
(Case No. 10-00945 CW)
2212802

**REDACTED**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND STATEMENT OF ISSUES ........................................................2

II.   STATEMENT OF RELEVANT FACTS .......................................................................4

       A.    Tessera And PTI.............................................................................................4

       B.    The 2003 License Agreement ........................................................................5

              1.    The Agreed Upon License Grant ........................................................5

              2.    The Agreed Upon Basis on Which Royalties Are To Be Paid..................6

              3.    The Agreed Upon Royalty Reports ....................................................7

       C.    Tessera's Assertion Of Its Patents Against Third Parties ............................8

III.  ARGUMENT ..........................................................................................................10

       A.    The Court Has The Power and Obligation to Determine The
             Existence Of Subject Matter Jurisdiction....................................................10

       B.    PTI Cannot Meet Its Burden Of Establishing A Controversy Over
             The Claims It Purports To Present. ...........................................................11

              1.    PTI Has No Reasonable Apprehension Of Suit. ..............................11

              2.    The 2003 Agreement Does Not Turn On The Issues PTI
                    Purports To Raise In Its Complaint...............................................13

                    a.    Because PTI and Tessera Elected        REDACTED

                                                        There Is No Actual Controversy As
                          Alleged.........................................................................13

                    b.    PTI and Tessera Elected          REDACTED

                                                  ............................................................17

              3.    The Still-Incomplete Reexamination Of Several Claims Of
                    The '106 Patent Does Not Establish Jurisdiction...........................18

IV.   CONCLUSION ......................................................................................................20

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2212802

**REDACTED**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arakai v. Lingle,*
 477 F.3d 1048 (9th Cir. 2007) ........................................................................... 10

*Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,*
 339 U.S. 827 (1950) ............................................................................................ 13

*Bd. of Regents, Univ. of Texas Sys., ex rel. Univ. of Tex. at Austin v. Nippon Tel. & Tel. Corp.,*
 414 F.3d 1358 (Fed. Cir. 2005) .......................................................................... 19

*Benitec Austl., Ltd. v. Nucleonics, Inc.,*
 495 F.3d 1340 (Fed. Cir. 2007) .......................................................................... 10

*Cedars-Sinai Med. Center v. Watkins,*
 11 F.3d 1573 (Fed. Cir. 1993) ............................................................................ 10

*Consol. World Housewares, Inc. v. Finkle,*
 831 F.2d 261 (Fed. Cir. 1987) ............................................................................ 19

*EchoStar Satellite LLC v. Finisar Corp.,*
 515 F. Supp. 2d 447 (D. Del. 2007) .................................................................... 18

*Engel Indus., Inc. v. Lockformer Co.,*
 96 F.3d 1398 (Fed. Cir. 1996). ........................................................................... 13

*Fujitsu Ltd. v. Nanya Tech. Corp.,*
 2008 U.S. Dist. LEXIS 63830 (N.D. Cal. 2008) ................................................ 10

*Honeywell, Inc. v. Victor Co. of Japan, Ltd.,*
 298 F.3d 1317 (Fed. Cir. 2002) .......................................................................... 14

*Hynix Semiconductor Inc. v. Rambus Inc.,*
 441 F. Supp. 2d 1066 (N.D. Cal. 2006) ............................................................. 14

*In re Certain Semiconductor Chips With Minimized Package Size And Products Containing Same,*
 Inv. No. 337-TA-630, Comm'n Opinion, 2009 WL 686377 (USITC Feb. 24. 2010)................................................................................................................ 8

*Info-Hold, Inc. v. Sound Merchandising, Inc.,*
 538 F.3d 448 (6th Cir. 2008) .............................................................................. 14

*Kiest v. Kiest,*
 2000 WL 1307511 (N.D. Ill. Sept. 12, 2000) .................................................... 14

*Lear, Inc. v. Adkins,*
 395 U.S. 653 (1969) ............................................................................................ 13

*MedImmune, Inc. v. Genentech, Inc.,*
 549 U.S. 118 (2006) ................................................................................. 10, 17, 18

**REDACTED**

Page(s)

*Metrologic Instruments, Inc. v. Symbol Techs., Inc.*,
    254 Fed. Appx. 128 (3d Cir. 2007) (nonprecedential) ......................................... 14, 15, 16

*Neev v. Choi*,
    2008 WL 4531817 (N.D. Cal. Oct. 7, 2008) ................................................. 3, 14

*Prasco, LLC v. Medicis Pharm. Corp.*,
    537 F.3d 1329 (Fed. Cir. 2009) ....................................................... 10

*Sanitec Industries v. Micro-Waste Corp.*,
    2006 WL 3455000 (S.D. Tex. 2006)..................................................... 14

*Tessera, Inc. v. A-DATA Tech. Co. et al.*,
    Civil Action No. 2:07-cv-534 (E.D. Tex.) ........................................... 9

*Tessera, Inc. v. United Test And Assembly Center, Ltd.*,
    Case No. RG08410327 (Cal. Sup. Ct.) ............................................. 18

*Texas Instruments , Inc. v. Hyundai Elecs. Indus.*,
    42 F. Supp. 2d 660 (E.D. Tex. 1999) ............................................... 14, 16

*Thornhill Publishing Co. v. General Tel. & Elecs. Corp.*,
    594 F.2d at 733 ................................................................... 10, 18

*U.S. Valves, Inc. v. Dray*,
    212 F.3d 1368, (Fed. Cir. 2000) ................................................. 3, 14, 17, 18

*United Technologies Corp. v. Chromalloy Gas Turbine Corp.*,
    105 F. Supp. 2d 346 (D. Del. 2000) ............................................... 15

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. 1981)..................................................... 10

**Statutes**

28 U.S.C. § 2201(a)................................................................ 10

35 U.S.C. § 134(b) ................................................................ 19

35 U.S.C. § 271(a)................................................................ 12

35 U.S.C. § 6(a).................................................................. 19

**Other Authorities**

Jay Dratler, Jr., LICENSING OF INTELLECTUAL PROPERTY (2009)) § 4.03[1][c]............................ 13

Thomas J. Parker, PATENT LICENSING TRANSACTIONS (Matthew Bender 2009))
    § 3.03 ......................................................................... 14

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2212802

- iii -

REDACTED

## NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 6, 2010, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, Defendant Tessera, Inc., ("Tessera") will and hereby does move for an order dismissing the complaint and action for lack of subject matter jurisdiction.

Tessera's Motion for an order dismissing the complaint and action for lack of subject matter jurisdiction is based on this Notice and Memorandum of Points and Authorities, and on the supporting declaration attached hereto, the pleadings on file in this action, and such argument and evidence as may be presented at the hearing on this Motion.

Dated: April 1, 2010                    Respectfully submitted,

                                        IRELL & MANELLA LLP

                                        By:_____/s/ Jonathan H. Steinberg_____
                                               Jonathan H. Steinberg
                                        Attorneys for Defendant Tessera, Inc.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

REDACTED

1       **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.      INTRODUCTION AND STATEMENT OF ISSUES**

3           The Complaint filed by Powertech Technology, Inc. ("PTI") would have the Court believe

4  that PTI and Tessera are locked in a justiciable dispute over whether one of Tessera's patents, U.S.

5  Pat. No. 5,663,106 ("the patent" or "the '106 Patent") is infringed by PTI and valid.   In fact, no

6  such dispute exists.  PTI is a licensee in good standing of a portfolio of well over a hundred

7  Tessera patents, including the '106 Patent.  The asserted infringement and validity issues PTI

8  purports to raise do not affect the parties' contractual relationship or raise any other justiciable

9  controversy for the simple reason that the parties' license agreement requires royalty payments to

10 be made based on                                   REDACTED

11                                         .  Simply put, PTI is seeking a burdensome

12 advisory opinion that would require the Court to adjudicate a non-existent patent infringement and

13 validity dispute in aid of PTI's apparent wish to renegotiate its existing agreement with Tessera.

14          Tessera respectfully requests that the Court dismiss PTI's complaint for lack of subject

15 matter jurisdiction.  In 2003, PTI and Tessera entered into a license agreement (the "Agreement"

16 or "2003 Agreement"),[1] under which PTI has secured years of freedom from infringement

17 litigation on more than 150 licensed U.S. and foreign patents, of which the '106 Patent is but one;

18 and Tessera has secured in return a stream of royalty payments on PTI products that meet the

19 parties' agreed-upon, objective definition.  As far as Tessera is aware, PTI is a licensee in good

20 standing and it and its customers therefore enjoy protection against any suit accusing its licensed

21 products of infringement of the '106 Patent or any other licensed patent.

22          PTI nonetheless asks the Court to oversee years of infringement and validity litigation to

23 establish whether or not the '106 Patent is invalid and not infringed by PTI.  PTI's complaint

24 appears to claim that such an undertaking is warranted because PTI's royalty obligations would be

25 somehow lowered if the '106 Patent were found invalid or not infringed.  But the parties' 2003

26 ───────────────────────
           [1] The 2003 Agreement is attached as Exhibit 1 to the Declaration of Kenneth Weatherwax
27 filed concurrently herewith, as are all exhibits cited herein.  Tessera designates the 2003
   Agreement as "CONFIDENTIAL" under the Court's Model Protective Order, which is attached as
28 Exhibit 2 to the Declaration.  *See* Patent Local Rule 2-2.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

REDACTED

1  Agreement says        REDACTED        . Under the terms of the Agreement, Tessera agreed not to

2  assert infringement against licensed PTI products and PTI agreed to pay royalties on products

3  based on                                    REDACTED

4

5

6      When a body of complex patent technology . . . is licensed, one option may be to
       apply the royalty *without respect to the extent of operation that would otherwise*
7      *constitute infringement*. This type of arrangement offers these advantages: (1) The
       licensor is relieved from proving infringement on a case by case basis . . . (2) The
8      licensee is free to proceed with full production plans without concern as to the
       impact of the license on any given course of action.

9  Ex. 3 (Thomas J. Parker, PATENT LICENSING TRANSACTIONS (Matthew Bender 2009)) § 3.03.

10 Similarly settled is the Federal Courts' recognition that such abstract noninfringement and

11 invalidity allegations do not create subject matter jurisdiction where the parties have entered into

12 this kind of license arrangement. *See, e.g., Neev v. Choi*, 2008 WL 4531817, at *2, *3 (N.D. Cal.

13 Oct. 7, 2008) (granting motion to dismiss for lack of jurisdiction where "[the licensees] have not

14 explained why any determination of claim scope is necessary to prove [patentee]'s breach of

15 contract claim. Contrary to *U.S. Valves*[*, Inc. v. Dray*, 212 F.3d 1368 (Fed. Cir. 2000)], here it

16 will not be necessary to determine whether [the licensees'] product infringes any patent."); *see*

17 *also FURminator, Inc. v. Ontel Prods., Inc.*, 246 F.R.D. 579, 585-92 (E.D. Mo. 2007) (granting

18 motion to dismiss declaratory claims for patent invalidity where patentee's agreement not to sue

19 for infringement precluded actual controversy between parties over issue).

20      PTI's allegations that Tessera has asserted the '106 Patent against unlicensed third parties

21 could not be more irrelevant to the presence of a real or immediate controversy with PTI. The

22 difference between PTI and those other parties is rudimentary: unlicensed third parties *lack* a

23 license governing these products; PTI *has* a license, and that license protects PTI and its

24 customers. Tessera has never asserted the '106 Patent against a licensed product, and any

25 apprehension that it intends to do so despite the presence of a license is objectively unreasonable.

26 Indeed, the very complaint that PTI references specifically excluded licensed products

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1    manufactured by licensed companies such as PTI from its purview.  Ex. 4 (Tessera Complaint

2    filed in U.S. Int'l Trade Commission Investigation No. 337-TA-630) ¶ 9.

3         The only real disagreement between Tessera and PTI seems to be that PTI wishes to

4    renegotiate the Agreement and pay a lower royalty, and Tessera is satisfied with the parties' actual

5    agreement.  Every royalty-paying licensee has no doubt wished for a lower royalty from time to

6    time.  But a wish does not create a case or controversy justiciable in this Court, especially when

7    the parties' actual agreement makes clear that the payment of royalties has nothing to do with

8    whether the '106 Patent is infringed or valid.

9         This case was reassigned to this Court because the Court has adjudicated real disputes

10   between Tessera and other parties in the past, and has numerous other stayed disputes concerning

11   Tessera's patents currently pending before it.  If PTI is allowed to seek an advisory opinion from

12   this Court on the infringement and validity of a particular one of the scores of patents it has

13   licensed from Tessera, then there is hardly any situation in which a package or portfolio licensee

14   seeking to re-negotiate its license would not be able to monopolize the Court's time by demanding

15   infringement and validity adjudications about any or all of the licensed patents.

16        To protect the Court's limited jurisdiction, PTI's complaint should be promptly dismissed

17   for lack of subject matter jurisdiction.

18   **II.    STATEMENT OF RELEVANT FACTS**

19        **A.    Tessera And PTI**

20        Tessera is a publicly traded company whose business includes the development of

21   semiconductor and semiconductor packaging technologies.  It is also the owner of over 1,000

22   United States and foreign patents.  Ex. 5 (Tessera 2009 Form 10-K), at 11.  Approximately

23   seventy companies in the semiconductor industry, including such entities as Intel, Texas

24   Instruments, and Motorola, are Tessera licensees.  *Id.* at 9.  The industry's adoption of Tessera's

25   technology is so pervasive that Tessera is paid royalties on over ten billion semiconductor

26   packages annually.  Ex. 6 (USITC Inv. No. 337-TA-605 Hrg. Tr.) at 319:18-321:5 (testimony of

27   Tessera's then-CEO Bruce McWilliams, Ph.D.).

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

DEFENDANT TESSERA INC.'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
(Case No. 10-00945 CW)
2212802

- 4 -

REDACTED

1     PTI is a semiconductor packaging assembler that operates under a patent license agreement

2   with Tessera.  Complaint ¶ 7.  The Complaint alleges that PTI has regularly paid royalties under

3   its agreement since 2003.  Complaint ¶ 9.  So far as Tessera is aware, PTI is currently a licensee in

4   good standing and is complying with the written terms of the agreement, including the payment of

5   royalties on all packages that meet the definition that the parties agreed upon to determine when

6   and how royalties would be paid.  *See id.*

7         **B.**      **The 2003 License Agreement**

8         As is evident from the attached 2003 License Agreement between PTI and Tessera, PTI

9   became a licensee to certain Tessera patent rights in exchange for an agreement to pay royalties on

10  products that                                               REDACTED

22                                           The advisory declaration that PTI seeks would have no

23  legal effect on the royalty obligation that PTI agreed to pay.

24         **1.**      The Agreed Upon License Grant

25        PTI and Tessera agreed that, subject to PTI's compliance with the royalty terms of the

26  Agreement, Tessera would grant PTI                          REDACTED

28  DEFENDANT TESSERA INC.'S MOTION TO DISMISS
    FOR LACK OF SUBJECT MATTER JURISDICTION
    (Case No. 10-00945 CW)
    2212802                                        - 5 -

REDACTED

REDACTED

REDACTED

Like most of the rest of the industry, PTI sought the right to use Tessera's technology, and to be free of any claim of infringement of the licensed Tessera patents, so long as it paid the agreed upon royalties on the agreed upon products.

### 2.    The Agreed Upon Basis on Which Royalties Are To Be Paid

The parties agreed that PTI                    REDACTED

REDACTED

---

2

REDACTED

DEFENDANT TESSERA INC.'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
(Case No. 10-00945 CW)
2212802

- 6 -

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

REDACTED

REDACTED

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17        **3.**        The Agreed Upon Royalty Reports

18        The parties' agreement further specifies          REDACTED

19

20

21

22

23

24

25

26

27

28

REDACTED

REDACTED

REDACTED

### C.     Tessera's Assertion Of Its Patents Against Third Parties

PTI and Tessera negotiated and signed the Agreement in 2003.  As far as Tessera is aware, both PTI and Tessera are performing in accordance with the terms of their contract, and as a result PTI has enjoyed freedom from any claim of infringement of the licensed patents based on the licensed products by virtue of its compliance with the Agreement.

Tessera has initiated patent enforcement proceedings against third parties who lack Tessera licenses, based on those parties' infringement of the '106 Patent.  In one, a U.S. International Trade Commission investigation, the Commission determined that the '106 Patent was valid and was infringed by certain products.  *In re Certain Semiconductor Chips With Minimized Package Size And Products Containing Same*, Inv. No. 337-TA-630 ("ITC 630 Investigation"), Comm'n Opinion, 2009 WL 686377, at 1 (USITC Feb. 24. 2010).  That ruling is currently on appeal to the Federal Circuit, where briefing is pending.  While it is Tessera's understanding that certain third parties nominally subject to the ITC's exclusion powers are customers of PTI, Tessera expressly

REDACTED

1   excluded any licensed products from the purview of its actions.  *E.g.*, Ex. 4 (337-TA-630

2   Complaint) ¶ 9 (stating that "[t]o the extent that any Accused Product is found to be properly

3   licensed . . . under Tessera's patents, Tessera does not intend to bring—nor should Tessera be

4   construed to have brought—any such Accused Product(s) within the scope of the present

5   Investigation.").  In a parallel district court action involving the same parties, patents and

6   products,[3] all proceedings are stayed pending the completion of proceedings in the ITC

7   Investigation.  Complaint ¶ 11.

8           Certain third parties have filed complaints in this Court in 2008 seeking declaratory

9   judgments concerning the infringement and validity of the '106 Patent.[4]  Unlike PTI, the

10  declaratory plaintiffs in those cases are ***not*** licensees of Tessera for such products,[5] let alone

11  licensees in good standing like PTI.  These proceedings, too, are currently stayed.  Ex. 7 (order

12  simultaneously granting stay in both cases).

13          During the term of the 2003 Agreement between PTI and Tessera, PTI has   REDACTED

14

15

16

17

18

19           It appears that the present complaint is an effort to enlist the Court in the dubious

20  contractual negotiations that PTI wishes to pursue.

21

22

23

24

25          [3] *Tessera, Inc. v. A-DATA Tech. Co. et al.*, Civil Action No. 2:07-cv-534 (E.D. Tex.).

26          [4] *Siliconware Precision Industries Co., Ltd. et al. v. Tessera, Inc.*, Case No.
    C 08-03667 CW; *ChipMOS Technologies, Inc. et al. v. Tessera, Inc.*, Case No. C 08-03827 CW.

27                ₅R
                    E
                    D
28                  A
                    C
    DEFENDANT TESSERA INC.'S MOTION TO DISMISS
    FOR LACK OF SUBJECT MATTER JURISDICTION
    (Case No. 10-00945 CW)
    2212802                                    - 9 -

REDACTED

1   III.   **ARGUMENT**

2        A.   **The Court Has The Power and Obligation to Determine The Existence Of**
3             **Subject Matter Jurisdiction.**

4        In analyzing jurisdictional questions in declaratory judgment actions, "the question in each

5   case is whether the facts alleged, under all the circumstances, show that there is a substantial

6   controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

7   warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.

8   118, 127 (2006) (footnote omitted).  The Court has the power to decide the jurisdictional issues for

9   itself:

10          It is elementary that a district court has broader power to decide its own right to
            hear the case than it has when the merits of the case are reached.  Jurisdictional
11          issues are for the court—not a jury—to decide, whether they hinge on legal or
            factual determinations. . . . This means that the district court is not limited to an
12          inquiry into undisputed facts.  It may hear conflicting written and oral evidence and
            decide for itself the factual issues which determine jurisdiction.
13
    *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *see Cedars-Sinai Med. Center v.*
14
    *Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.
15
    2000); *Fujitsu Ltd. v. Nanya Tech. Corp.*, 2008 U.S. Dist. LEXIS 63830 (N.D. Cal. 2008).  In this
16
    inquiry, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of
17
    disputed material facts will not preclude the trial court from evaluating for itself the merits of
18
    jurisdictional claims."  *Thornhill Publishing Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730,
19
    733 (9th Cir. 1979).
20
        As the cases make clear, PTI bears the burden of proving subject matter jurisdiction,
21
    *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007), including the
22
    existence of an "actual controversy," 28 U.S.C. § 2201(a), "based on a real or immediate injury or
23
    threat of future injury that is caused by the defendants," *Prasco, LLC v. Medicis Pharm. Corp.*,
24
    537 F.3d 1329, 1338 (Fed. Cir. 2009) (emphases omitted), and would "likely be redressed" by the
25
    requested declaratory relief.  *Arakai v. Lingle*, 477 F.3d 1048, 1064-65 (9th Cir. 2007).  PTI
26
    cannot shoulder that burden.
27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

REDACTED

A simple evaluation of the parties' Agreement, which PTI chose not to attach to the Complaint, demonstrates that that there is no reasonable apprehension of suit between the parties regarding the '106 Patent, and that the time-consuming and costly process of adjudicating infringement or validity of the '106 patent would have no effect on the obligations that PTI wishes to escape.

## B.   **PTI Cannot Meet Its Burden Of Establishing A Controversy Over The Claims It Purports To Present.**

Studiously ignoring the actual contractual relationship between the parties, PTI barely even attempts to present a legal basis for the declaration it seeks, relying on strategic omissions of basic facts and on factual allegations that are irrelevant or demonstrably wrong.  The Federal Courts have repeatedly recognized, in the context of motions to dismiss and elsewhere, that claims of non-infringement and invalidity are not placed into actual controversy by parties who have elected to enter into                    REDACTED                    .

### 1.   PTI Has No Reasonable Apprehension Of Suit.

In conclusory fashion, the complaint alleges:

> Tessera has sued PTI's customers . . . for infringement of the '106 Patent with respect to wBGA products.  PTI also has an objectively reasonable apprehension that Tessera will sue PTI or its customers for alleged infringement of the '106 Patent.

Complaint ¶ 21.  The first of these allegations is irrelevant and misleading; the second is demonstrably false.  The fact that Tessera has asserted the '106 Patent against unlicensed entities, and not PTI, does not create any case or controversy between Tessera and PTI.  Indeed, it proves the absence of such a real dispute; the Complaint itself acknowledges that Tessera has not named *PTI* in any action concerning any of its patents, including the '106 patent.  Complaint ¶¶ 10-11.  Because PTI currently is a licensee in good standing, and currently has a license to practice the '106 and the other licensed patents, Tessera could not sue PTI on the '106 Patent so long as PTI pays the agreed upon royalties on the products defined as royalty bearing under the Agreement.  Moreover, Tessera's actions against companies that may purchase some portion of their products

DEFENDANT TESSERA INC.'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
(Case No. 10-00945 CW)
2212802

- 11 -

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

**REDACTED**

1   from PTI (i.e., the entities identified by PTI as its "customers") expressly ***excluded*** any claims

2   based on licensed products supplied by licensees such as PTI.

3        PTI acknowledges that PTI and Tessera have "entered into a patent license agreement" that

4   "includes the '106 Patent." *Id.* ¶ 8.  PTI also states that it has  "paid to Tessera the royalties owed

5   and due for products sold" pursuant to the license Agreement.  *Id.* ¶ 14.  Tessera has no

6   information that would call this statement into any doubt.  Thus, under the Agreement, as long as

7   PTI pays royalties on TCC Licensed Products, PTI has                    REDACTED

8

9                                                               The facts alleged by PTI, and the

10  agreement it relies, conclusively rebut any suggestion that PTI could have an objectively

11  reasonable apprehension that Tessera will sue PTI for infringement of the '106 Patent.  Indeed, so

12  long as the terms of the Agreement are satisfied.          REDACTED               are made

13  with the authority of Tessera, and there can be no infringement, let alone a reasonable basis to

14  apprehend an infringement suit grounded on the licensed patents.  *See* 35 U.S.C. § 271(a)

15  (infringement requires actions "without authority").

16       To conjure up some kind of faux apprehension, however unreasonable, the Complaint

17  misleads the Court by alleging that Tessera has asserted in the ITC that some of PTI's customers

18  infringe the '106 Patent by "the importation and sale of wBGA and uBGA *[sic]* products,

19  including those products packaged by PTI for the customers."  Complaint ¶ 10.  To the extent that

20  PTI is suggesting that Tessera has sued any customers of PTI for infringement based on PTI's

21  licensed products, this allegation is false.  Tessera specifically excluded from its complaint any

22  accusation of infringement based on any product for which a Tessera licensee like PTI has already

23  paid a royalty.  Ex. 4 (337-TA-630 Complaint) ¶ 9.

24       Based on PTI's own allegations, its customers are purchasing licensed products, and, like

25  PTI itself, are free of any apprehension of suit based on those products for infringement of any of

26  the patents to which PTI is licensed.

27

28

REDACTED

**2.** The 2003 Agreement Does Not Turn On The Issues PTI Purports To Raise In Its Complaint.

PTI's complaint is written to suggest that                    REDACTED

PTI's royalty obligations to Tessera under the contract.  See Complaint ¶¶ 8-9, 14.  These allegations are belied by the 2003 Agreement, which PTI omitted from its complaint.

PTI alleges "that royalties are not owed on PTI's wBGA products" because PTI has formed the belief that the '106 Patent is invalid and does not cover those products.  *Id.* ¶ 14.  RED ACT ED

a. *Because*                    REDACTED
                    *There Is No Actual Controversy As Alleged.*

It is well settled that parties may properly                    REDACTED

> Nothing in patent law . . . requires that the royalty base in a patent license be defined by patent claims.  Often licensors define the royalty base in business, rather than legal, terms.

Ex. 8 (Jay Dratler, Jr., LICENSING OF INTELLECTUAL PROPERTY (2009)) § 4.03[1][c]; *see also, e.g., Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1408 (Fed. Cir. 1996).

Such a definition, particularly for a license covering hundreds of patents, can relieve both the patentee and the licensee from the administrative burdens and expenditures that would be incurred in determining the coverage or validity of the licensed patents every time royalties are due.  *Compare, e.g., Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 833-34 (1950) (total sales of calculating royalties may represent "the most convenient method of fixing the business value of the privileges granted by the licensing agreement" and "a convenient mode of operation designed by the parties to avoid the necessity of determining whether each type of the licensee's product embodies any of the licensee's numerous patents."), *overruled in nonpertinent part by Lear, Inc. v. Adkins*, 395 U.S. 653, 671 (1969); *Engel*, 96 F.3d at 1408 & n.2 (noting that

IRELL & MANELLA LLP
A Registered Liability
Law Partnership Including
Professional Corporations

DEFENDANT TESSERA INC.'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
(Case No. 10-00945 CW)
2212802

- 13 -

**REDACTED**

parties may agree to total sales royalty in patent license agreement "if that provides a convenient means for measuring the value of the license").  A recent summary of law and practice makes this particularly clear:

> When a body of complex patent technology . . . is licensed, one option may be to apply the royalty *without respect to the extent of operation that would otherwise constitute infringement*.  This type of arrangement offers these advantages: (1) The licensor is relieved from proving infringement on a case by case basis . . . (2) The licensee is free to proceed with full production plans without concern as to the impact of the license on any given course of action.

Ex. 3 (Thomas J. Parker, PATENT LICENSING TRANSACTIONS (Matthew Bender 2009)) § 3.03.

Federal courts have no hesitation in recognizing that contractual obligations between parties to such patent license agreements do not turn on proof of patent infringement or validity. *See, e.g.*, *Metrologic Instruments, Inc. v. Symbol Techs., Inc.*, 254 Fed. Appx. 128, 131 (3d Cir. 2007) (nonprecedential) ("On its face, Section 6.2 [of the license agreement] does not require a finding of infringement as a prerequisite to [the licensee]'s promise to pay royalties.").[6] Moreover, they regularly dismiss requests for declaratory judgments of patent infringement or validity when the parties' contractual obligations do not turn on those issues.  *See, e,g*, *Neev v. Choi*, 2008 WL 4531817, at *2, *3 (N.D. Cal. Oct. 7, 2008) (finding lack of subject matter jurisdiction where "[The licensees] have not explained why any determination of claim scope is necessary to prove [patentee]'s breach of contract claim. Contrary to *U.S. Valves*, here it will not be necessary to determine whether [the licensees'] product infringes any patent."); *Kiest v. Kiest*, 2000 WL 1307511, at *1-*2 (N.D. Ill. Sept. 12, 2000) ("[U]nlike in *U.S. Valves*, [the patentee]'s

---

[6] *See also, e.g.*, *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 453 (6th Cir. 2008) (setting royalty obligations based on whether certain "on-hold message playback machines" made certain technical requirements, not whether they were proved to be covered by licensed patents); *Honeywell, Inc. v. Victor Co. of Japan, Ltd.*, 298 F.3d 1317, 1329 (Fed. Cir. 2002) (parties negotiated patent license under which royalties were owed for "apparatus or combination of apparatus for use with a camera, to provide optical images of objects which are converted into video signals," with no proof of patent coverage necessary); *Hynix Semiconductor Inc. v. Rambus Inc.*, 441 F. Supp. 2d 1066, 1072 (N.D. Cal. 2006) (royalties required not for products proved to be covered by licensed patents, but for "Rambus memories" and other "DRAMs"; *Sanitec Industries v. Micro-Waste Corp.*, 2006 WL 3455000 (S.D. Tex. 2006) (enforcing license agreement requiring royalty payments for each "microwave disinfection unit" sold); *Texas Instruments, Inc. v. Hyundai Elecs. Indus.*, 42 F. Supp. 2d 660, 680-81, 692 (E.D. Tex. 1999) (agreement required royalties on all sales of certain "semiconductive elements" and "semi-conductive apparatus" without regard for proving that they were covered by licensed patents).

DEFENDANT TESSERA INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
(Case No. 10-00945 CW)
2212802

- 14 -

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1   claim does not depend on the terms of the patent. If there ends up being an issue concerning

2   whether a particular activity by [the licensee] is covered by the agreement, it will turn on what was

3   meant by the contract's reference to 'the expandable pipelining method,' not by reference to the

4   scope of the issued patent."); *United Technologies Corp. v. Chromalloy Gas Turbine Corp.*, 105 F.

5   Supp. 2d 346, 348, 358 (D. Del. 2000) ("Under the agreement, [licensee] agrees to pay [patentee]

6   a 15% royalty whenever it applies the PWA 266 coating to engine parts originally manufactured

7   by [patentee]. . . . [Licensee] alleges that [patentee] breached the [license agreement] by changing

8   its PWA 266-5 product designation to avoid its obligations . . . [T]he court does not need to

9   interpret [patentee]'s patents to determine if [patentee] breached the licensing agreements.  Rather,

10  the court must interpret the terms of the licensing agreements . . . ."), *aff'd*, 30 Fed. Appx. 980

11  (Fed. Cir. 2002).

12      The *Metrologic* decision above is illuminating.  There, the district court granted summary

13  judgment on a patent license similar to the 2003 Agreement, finding as a matter of law that the

14  royalty obligation under that contract was based on an objective definition—not on any proof of

15  patent infringement.  *Metrologic*, 254 Fed. Appx. at 131.  There, as here, the licensee argued that

16  the contract required proof of infringement of a valid licensed patent, but there, as here, the actual

17  agreement provided otherwise.  *Id.*  The court reviewed a provision that required payment on

18  certain defined "Licensed Products," and recognized that these provisions did not turn on proof of

19  patent infringement or validity.  *Id.* (emphasis added):

20      [The licensee] Symbol . . . argues that the Agreement unambiguously provides that
        Symbol has no obligation to pay royalties unless and until a court finds that a
21      Symbol product infringes a Metrologic patent. ***The short answer is that the
        Agreement certainly does not say that. . . .*** On its face, Section 6.2 does not require
22      a finding of infringement as a prerequisite to Symbol's obligation to pay royalties.

23  The licensee then "point[ed] to other provisions of the Agreement that, it argue[d], demonstrate[d]

24  that no royalties [we]re due under Section 6.2 unless and until a court f[ou]nd[] that a Symbol

25  product infringe[d] a Metrologic patent."  *Id.*  Affirming the district court's judgment, the Third

26  Circuit found as a matter of law that these provisions provided no support for rewriting the

27  Agreement to import an infringement or validity requirement that the royalty provision "[o]n its

28

DEFENDANT TESSERA INC.'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
(Case No. 10-00945 CW)
2212802

**REDACTED**

1    face" did not include.  *Id.*[7]  The Third Circuit specifically contrasted this royalty provision with

2    another royalty provision in the Symbol-Metrologic license agreement, applicable to ***other*** patents

3    to which Symbol had the right to take a license—in which the royalty obligation ***was*** defined by

4    whether products were "covered by a claim in at least one" licensed patent.  *Id.*  Thus, the court

5    recognized that the parties to this patent license could have selected either manner of defining their

6    royalty obligations, and accordingly respected the agreement that they had made.

7        *Texas Instruments, Inc. v. Hyundai Electronics Industries Co., Ltd.*, 42 F. Supp. 2d 660

8    (E.D. Tex. 1999), also found as a matter of law that a royalty provision was based on objective

9    criteria, rather than proof of infringement or validity.  The court found that the package patent

10   license between Texas Instruments and Hyundai defined the group of royalty-bearing products

11   with reference to business criteria, not depending on whether the products were "covered by"

12   patents, and accordingly dismissed the case on summary judgment.  *Texas Instruments*, 42 F.

13   Supp. 2d at 679-80.  The court noted the peculiar results that would ensue if such a broad package

14   license were interpreted to depend on a finding of infringement.  *Id.* at 664, 678-81 (footnotes

15   omitted, emphases in original):

16           In order for Texas Instruments to establish just one of its products as a royalty
            bearing product under Hyundai's interpretation of the term, Texas Instruments
17          would have to study the patent laws of the country in which the same is made by
            Hyundai, file a patent-infringement lawsuit against Hyundai on that single product,
18          and win a verdict against Hyundai under the patent laws of that particular country
            for that particular product. . . . The only way the parties could establish "royalty
19          bearing products" to determine royalties would be through product-by-product,
            patent-by-patent, country-by-country litigation. . . . Texas Instruments would
20          literally have to file (and win) a patent-infringement lawsuit for each product for
            each country where Hyundai is selling that particular Texas Instruments
21          product. . . .

22           So what is Hyundai licensed to sell under the License Agreement?  By
            Hyundai's interpretation, nothing until Texas Instruments takes a patent
23          infringement verdict against Hyundai on that particular product under the patent
            laws of the country in which Hyundai's sale occurs.  The *License* Agreement, then,
24          actually *licenses nothing*.

25   _____

26       [7] The royalty provision in *Metrologic* required a fixed amount royalties per time period
     rather than a fixed amount per billable pin of objectively defined product sold.  *Id.*  However, that
27   difference does not affect the applicability of the court's reasoning here.  In neither case does the
     definition of royalties due have anything to do with whether any particular licensed patent is
28   proven to be infringed or invalid.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

REDACTED

b. *PTI and Tessera Elected*                    REDACTED

Tessera anticipates that PTI will urge the Court to ignore the terms of the 2003 Agreement, invoking cases like *MedImmune, Inc. v. Genentech, Inc.* to support its complaint despite the very different license terms at issue here.  Had they wished, PTI and Tessera could have agreed upon a contractual royalty provision that                    REDACTED

Jurisdiction cannot be based on a license agreement that the parties elected not to enter into.

It is of course lawful for parties to choose to base the royalty obligations in a patent license on products that are covered by, or would infringe the licensed patent or patents.  In *MedImmune*, for example, the court found jurisdiction where "[t]he agreement defined 'Licensed Products' as a specified antibody, 'the manufacture, use or sale of which * * * would, ***if not licensed under th[e] Agreement, infringe one or more claims of either or both of [the covered patents,] which have neither expired nor been held invalid by a court or other body of competent jurisdiction from which no appeal has been or may be taken.***'").  549 U.S. 118, 121 (emphasis added).  *See also U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1370-71, 1372 (Fed. Cir. 2000) (finding jurisdiction where the "agreement defined the 'Licensed Product' as 'the invention disclosed by the application(s) . . . and in patents which issue[d] therefrom'" . . . . To show that [the licensee] sold valves in contravention of U.S. Valves' exclusive rights to such sales, U.S. Valves must show that [the licensee] sold valves that were covered by the licensed patent.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

DEFENDANT TESSERA INC.'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
(Case No. 10-00945 CW)
2212802

- 17 -

REDACTED

REDACTED

**3.**   The Still-Incomplete Reexamination Of Several Claims Of The '106 Patent Does Not Establish Jurisdiction.

For good measure, the Complaint adds a final irrelevant and inaccurate allegation to its request for an advisory opinion: some of the claims of the '106 Patent are currently subject to a final rejection in "a pending reexamination" by the U.S. Patent and Trademark Office.  Complaint ¶ 26.  The Complaint leaps from this assertion to the false conclusion that "[a]ccordingly, there exists an actual controversy between PTI and Tessera concerning whether the claims of the '106 Patent are invalid."  As a threshold matter, the Complaint's characterization the '106 Patent as "subject to a final rejection" "before the United States Patent Office *[sic]*" is both inaccurate and incomplete.

---

R
E
D

In addition to                                                    REDACTED
in *MedImmune*, the Supreme Court also pointed out that the patentee had formally demanded, in writing, ***additional*** royalties on products for which the licensee had not been paying—expressly based on the patentee's assertion that these products on which royalties had not been paid were ***covered by the patent***.  *MedImmune* 549 U.S. at 121-22, 125 n.6.  *See also Finisar Corp. v. JDS Uniphase Corp.*, 2009 WL 801526, at \*2-\*4 (dismissing declaratory complaint where, *inter alia*, patentee never accused declaratory plaintiff of infringing patent); *compare, e.g., EchoStar Satellite LLC v. Finisar Corp.*, 515 F. Supp. 2d 447, 452 (D. Del. 2007) (finding jurisdiction where patentee had expressly accused defendant of infringing patent and parties had never signed patent license).

[9] Tessera recently adjudicated a state contract actiᴿᴱ<sub>DA</sub> against another, unrelated licensee, on a different license that is partly similar to and partly different from PTI's and Tessera's 2003 Agreement.  *Tessera, Inc. v. United Test And Assembly Center, Ltd.*, Case No. RG08410327 (Cal. Sup. Ct.).  In that case, the licensee raised the argument that royalties should not be due under the contract absent prior adjudications of patent infringement and validity for royalty-bearing products.  Ex. 9 (*Id.*, Aug. 25, 2009 Tessera Motion for Summary Adjudication) at 1-2.  The state court, which naturally does not hear patent cases, evinced signs of indecision, and ultimately declined to decide this question one way or the other under California's difficult summary judgment standard.  Ex. 10 (*Id.*, Dec. 10, 2009 Order Denying Motion) at 2 (reconsidering whether to request additional argument, then denying motion).  The case settled before Tessera could obtain a final determination on this issue.  Ex. 11 (*Id.*, Mar. 1, 2010 Order granting request for dismissal), at 1.  In contrast, this Court has extensive experience with federal patent matters, and the power here to decide material questions of fact.  *See Thornhill*, 594 F.2d at 733.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

REDACTED

1    It is true that the examiner entered rejections of claims 1-4, 9, 10 and 33-35 of the '106

2    claims in an office action designated as final on November 19, 2009.  Ex. 12 ('106

3    Reexamination, Nov. 19, 2009 Office Action).  But following that rejection, the examiner

4    indicated that he had reconsidered the grounds for those rejections, had decided that Tessera's

5    arguments were "persuasive" after all, and was prepared to "give[] favorable consideration toward

6    withdrawing each of the presently standing rejections":

7    ***These are persuasive arguments and considerations.***  The examiners have
      considered that if the specification of the ['106] patent under reeexamination is
8    amended to expressly provide the incorporated-by-reference subject matter that
      establishes this special definition for the term "top" and if, therewith, written
9    arguments are made by patent owner in accordance with the discussion of the
      interview, ***such a response will be given favorable consideration toward***
10   ***withdrawing each of the presently standing rejections against the claims***.

11   Ex. 13 ('106 Reexamination, Jan. 8, 2010 Interview Summary), at 2 (emphases added).  On

12   January 19, 2010, Tessera submitted the response that the examiner requested.  Ex. 14 ('106

13   Reexamination, Jan. 18, 2010 Response To Final Office Action), at 1-11.

14   The Complaint's characterization of the '106 Patent claims as "currently subject to a final

15   rejection," Complaint ¶ 27, is therefore misleading at best.[10]  But the fact that some of the claims

16   of the '106 Patent are subject to reexamination is perfectly irrelevant to whether a justiciable case

17   or controversy exists between PTI and Tessera.  Even if the reexamination were ultimately to

18   result in cancellation of some of the claims of the '106 Patent, it would not affect PTI's agreed-

19   upon royalty obligations.  *See, e.g., Bd. of Regents, Univ. of Texas Sys., ex rel. Univ. of Tex. at*

20   *Austin v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1363-1364, 1365 (Fed. Cir. 2005); *Consol.*

21   *World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987).

22

23

24

25

26   [10] Even if the Complaint had been truthful on this point, and even if the examiner in the
     reexamination were, in fact, later to impose a "final" rejection against all the claims, those
27   rejections would still be subject to appeal to the Board of Patent Appeals And Interferences "in the
     United States Patent And Trademark Office," 35 U.S.C. §§ 6(a) & 134(b), to say nothing of
28   further appeals to the federal courts, *id.* § 141.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

DEFENDANT TESSERA INC.'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
(Case No. 10-00945 CW)
2212802                                                                    - 19 -

REDACTED

1   **IV.     <u>CONCLUSION</u>**

2        PTI has no reasonable (or other) apprehension of suit under the '106 Patent, and the

3   parties' contractual relationship does not depend on the issues PTI purports to raise in its

4   Complaint.  For the reasons set forth above, there is no actual controversy between the parties

5   concerning the '106 Patent warranting declaratory relief, and the complaint and action should be

6   dismissed.

7   Dated:  April 1, 2010               Respectfully submitted,

8                                 IRELL & MANELLA LLP

9                                 By:     /s/ Jonathan H. Steinberg

10                                     Jonathan H. Steinberg

11                            Attorneys for Defendant Tessera, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations