IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

POWERTECH TECHNOLOGY INC.,                    No. 10-00945 CW

       Plaintiff,                            ORDER GRANTING
                                 DEFENDANT'S
   v.                                          MOTION TO DISMISS
                                 (Docket No. 14)
TESSERA, INC.,

       Defendant.
_____/

    In this declaratory judgment action, Plaintiff Powertech
Technology Inc. (PTI) seeks declarations of non-infringement and
invalidity of Defendant Tessera, Inc.'s United States Patent No.
5,663,106 ('106 patent).  Tessera moves to dismiss the action for
lack of subject matter jurisdiction.  PTI opposes the motion.
Tessera objects to evidence submitted by PTI in support of its
opposition.  The motion was heard on May 13, 2010.  Having
considered oral argument and the papers submitted by the parties,
the Court GRANTS Tessera's Motion to Dismiss.  Tessera's objections
are OVERRULED as moot.

BACKGROUND

    The following allegations are contained in PTI's complaint.

    PTI, a corporation organized under the laws of Taiwan,
contracts with manufacturers to package semiconductor chips.  PTI
packages the chips in various layouts, including the stacked
window-BGA (wBGA) and mold-type micro-BGA (µBGA) formats.  After
they are packaged, PTI returns the chips to the manufacturer, which
then markets and sells them world-wide.  Some of these packaged-

**United States District Court**
For the Northern District of California

1  chip products are imported into the United States.

2      On or about October 20, 2003, PTI and Tessera entered into a

3  licensing agreement, which includes the '106 patent.  Under the

4  agreement, PTI pays Tessera royalties and provides royalty reports

5  for all packaged chips covered by the licensed patents.

6      On December 7, 2007, Tessera initiated actions before the

7  International Trade Commission (ITC) and the United States District

8  Court for the Eastern District of Texas,[1] alleging that various

9  chip manufacturers infringe, among others, its '106 patent.  Some

10  of these manufacturers are PTI's customers.  The district court

11  stayed its proceedings pending resolution of the ITC investigation.

12      On August 28, 2009, the administrative law judge (ALJ)

13  presiding over the ITC investigation issued an initial

14  determination, concluding that the accused wBGA and µBGA products

15  do not infringe the '106 patent.  The ALJ, however, did not find

16  that the chip manufacturers met their burden to prove invalidity.

17  Tessera petitioned the ITC for review of the ALJ's findings.

18      The ITC issued its final determination on December 29, 2009.

19  Among other things, it concluded that the accused wBGA products do

20  not infringe the '106 patent.  Tessera has appealed this decision

21  to the Court of Appeals for the Federal Circuit.

22      On February 23, 2010, PTI paid royalties for wBGA products to

23  Tessera as required by the licensing agreement.  However, PTI made

24  the payment "under protest" because it believes that the ITC

---

25

26  [1] The ITC investigation is captioned, <u>In re Certain Semiconductor Chips With Minimized Package Size and Products Containing Same</u>, Inv. No. 337-TA-630.  The district court action is

27  <u>Tessera, Inc. v. A-DATA Tech. Co.</u>, No. 2:07-cv-534 (E.D. Tex.).

28

decision demonstrates that the wBGA products are not covered by any
of Tessera's licensed patents and that, as a result, it does not
owe any royalties for wBGA products.  Compl. ¶ 14.

PTI now seeks declarations that its "wBGA packaging services
have not and do not infringe" the '106 patent and that the patent
is invalid.  Compl. ¶¶ 16 and 17.  Tessera contends that PTI cannot
maintain its declaratory judgment action because PTI fails to
present a justiciable controversy.

### LEGAL STANDARD

Subject matter jurisdiction is a threshold issue which goes to
the power of the court to hear the case.  Federal subject matter
jurisdiction must exist at the time the action is commenced.  GAF
Building Materials Corp. v. Elk Corp. of Dallas, 90 F.3d 479, 483
(Fed. Cir. 1996).  To sustain subject matter jurisdiction in the
declaratory judgment context, an "actual controversy" must exist.
Janssen Pharmaceutica, N.V. v. Apotex, Inc., 540 F.3d 1353, 1359
(Fed. Cir. 2008).  When such a controversy is lacking, dismissal is
appropriate under Rule 12(b)(1) because the district court lacks
subject matter jurisdiction over the claim.  Fed. R. Civ. P.
12(b)(1).

### BACKGROUND

The Declaratory Judgment Act permits a federal court to
"declare the rights and other legal relations" of parties to "a
case of actual controversy."  28 U.S.C. § 2201.  The "actual
controversy" requirement of the Act is the same as the "case or
controversy" requirement of Article III of the United States
Constitution.  Teva Pharm. USA, Inc. v. Novartis Pharm. Corp., 482

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  F.3d 1330, 1337 (Fed. Cir. 2007).  Before passage of the Act,

2  "competitors were victimized by patent owners who engaged in

3  extrajudicial patent enforcement with scare-the-customer-and-run

4  tactics that infected the competitive environment of the business

5  community with uncertainty and insecurity and that rendered

6  competitors helpless and immobile so long as the patent owner

7  refused to sue."  Id. at 1336 n.2 (citations, internal quotation

8  and editing marks omitted).  The Act "was intended 'to prevent

9  avoidable damages from being incurred by a person uncertain of his

10 rights and threatened with damage by delayed adjudication.'"  Cat

11 Tech LLC v. Tubemaster, Inc., 528 F.3d 871, 879-80 (Fed. Cir.

12 2008).  Exercise of declaratory judgment jurisdiction is

13 discretionary.  Id. at 883.

14     Until relatively recently, the Federal Circuit required that,

15 in order to prove an actual controversy, a plaintiff had to

16 establish that the defendant's conduct created an objectively

17 "reasonable apprehension" that the defendant would initiate suit

18 imminently if the plaintiff continued the allegedly infringing

19 activity.  See Teva, 482 F.3d at 1334-36.  In MedImmune, Inc. v.

20 Genentech, Inc., however, the Supreme Court noted that the Federal

21 Circuit's "reasonable apprehension of imminent suit" test

22 conflicted with several cases in which the Supreme Court had found

23 that a declaratory judgment plaintiff had a justiciable

24 controversy.  549 U.S. 118, 132 n.11 (2007).  The Supreme Court

25 instructed that, although there is no bright-line rule for

26 distinguishing cases that satisfy the actual controversy

27 requirement from those that do not, all that is required is

28                                    4

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> that the dispute be definite and concrete, touching the
> legal relations of parties having adverse legal
> interests; and that it be real and substantial and admit
> of specific relief through a decree of a conclusive
> character, as distinguished from an opinion advising what
> the law would be upon a hypothetical state of
> facts. . . . Basically, the question in each case is
> whether the facts alleged, under all the circumstances,
> show that there is a substantial controversy, between
> parties having adverse legal interests, of sufficient
> immediacy and reality to warrant the issuance of a
> declaratory judgment.

Id. at 127 (citations and internal quotation marks omitted).

Following MedImmune, the Federal Circuit recognized that the

Supreme Court did not approve of its reasonable apprehension of

imminent suit test.  SanDisk Corp. v. STMicroelectronics, Inc., 480

F.3d 1372, 1380 (Fed. Cir. 2007); Teva, 482 F.3d at 1340.  The

Federal Circuit discarded its "reasonable apprehension" requirement

in favor of MedImmune's "all circumstances" test.  Teva, 482 F.3d

at 1339 ("[W]e follow MedImmune's teaching to look at 'all the

circumstances' . . . to determine whether Teva has a justiciable

Article III controversy.").

Whether a declaratory judgment action is justiciable depends

"on the application of the principles of declaratory judgment

jurisdiction to the facts and circumstances of each case."

SanDisk, 480 F.3d at 1381.

Considering all of the circumstances, the Court finds that PTI

has not established a controversy of sufficient immediacy to

warrant a declaratory judgment action.  PTI maintains that it faces

an imminent threat of injury based on the ITC investigation and the

infringement suit initiated by Tessera against PTI's customers.

However, even though Tessera has asserted the '106 patent against

**United States District Court**
For the Northern District of California

1 PTI's customers, PTI has neither alleged facts nor presented

2 evidence to show that these actions are based on its wBGA products.

3 PTI's products are manufactured pursuant to a license with Tessera,

4 which has explicitly excluded licensed products from its

5 enforcement actions.[2]  PTI offers no evidence to support its

6 position that its products are at issue, notwithstanding Tessera's

7 disclaimer.[3]  Indeed, PTI concedes that "the named respondents and

8 defendants in Tessera's suits may obtain products from other

9 sources in addition to PTI."  Opp'n at 9 n.6.  This concession is

10 consistent with Tessera's disclaimer, in that the enforcement

11 actions arise from the chip manufacturers' sale and importation of

12 products not produced by PTI.  PTI fails to carry its burden to

13 show that the actions taken against its customers create an actual

14 controversy upon which its declaratory judgment action can be

15 based.

16    PTI likewise fails to allege an actual controversy arising

17 from the parties' licensing agreement.  PTI pleads that it "does

18 not believe that [its] wBGA products are covered by any licensed

19 Tessera patent, and therefore, the royalties are not owed on PTI's

20 _____

21    [2] In the ITC complaint, Tessera states, "To the extent that
any Accused Product is found to be properly licensed (through the
22 Limited Tape Licenses or otherwise) under Tessera's patents,
Tessera does not intend to bring -- nor should Tessera be construed
23 to have brought -- any such Accused Product(s) within the scope of
the present Investigation."  Weatherwax Decl., Ex. 4 ¶ 9.  At the
24 hearing, Tessera repeated this disclaimer in open court and stated
that it would amend its patent infringement complaint filed in the
25 Eastern District of Texas to include similar language.

26    [3] PTI asserts that the Court can infer that PTI packaged the
µBGA products accused in the ITC investigation.  This is immaterial
27 because wBGA, not µBGA, products are at issue in this action.

28

**United States District Court**
For the Northern District of California

1    wBGA products." Compl. ¶ 14. However, under the licensing

2    agreement's unambiguous terms, PTI's obligation to pay royalties

3    does not turn on whether its products are covered by the '106

4    patent. To argue the contrary, PTI cites its obligation to pay

5    royalties for "TCC Licensed Products sold by Licensee <u>hereunder</u>,"

6    asserting that "hereunder" somehow refers to a requirement that the

7    products be covered by the patents addressed in the licensing

8    agreement. Opp'n at 14 (emphasis in original). The agreement's

9    language is not reasonably susceptible of this interpretation.

10    "Hereunder" means "[i]n accordance with this document." <u>Black's</u>

11    <u>Law Dictionary</u> 796 (9th ed. 2009); <u>see also</u> <u>Mediterranean Enters.,</u>

12    <u>Inc. v. Sanyong Corp.</u>, 708 F.2d 1458, 1464 (9th Cir. 1983) ("We

13    interpret 'arising under' as synonymous with 'arising under the

14    Agreement.'"). Thus, the language PTI cites merely requires it to

15    pay royalties on TCC Licensed Products sold in accordance with the

16    agreement. Even when read with other language in the agreement,

17    "hereunder" does not tie PTI's payment obligation to coverage by

18    Tessera's patents.

19        To support its reading, PTI cites the declaration of Duh-Kung

20    Tsai, its chairman, who states that, during negotiations, PTI

21    understood that the agreement addressed products covered by

22    Tessera's patents. Even if the agreement language were reasonably

23    susceptible of PTI's interpretation and the Court admitted parol

24    evidence, Tsai's declaration would be irrelevant. He does not

25    assert that he took part in the negotiations. Nor does he offer

26    evidence that such a belief was expressed to Tessera at the time

27    the parties executed the agreement. <u>See</u> <u>Shaw v. Regents of Univ.</u>

28

United States District Court
For the Northern District of California

1  of Cal., 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a

2  contracting party is irrelevant if it remains unexpressed.")

3       MedImmune, upon which PTI relies heavily, is distinguishable

4  on the facts.  There, the petitioner and the respondent entered

5  into a licensing agreement, which covered an existing patent and an

6  invention claimed in a then-pending patent application.  549 U.S.

7  at 121.  The petitioner agreed to pay royalties in exchange for the

8  right to make, use and sell licensed products.  Id.  Such products

9  were defined as those manufactured, used or sold which "if not

10  licensed under the Agreement, infringe one or more claims of either

11  or both of the covered patents, which have neither expired nor been

12  held invalid by a court or other body of competent jurisdiction

13  from which no appeal has been or may be taken."  Id.  After the

14  above-mentioned application ripened into a patent, the respondent

15  notified the petitioner that one of its drugs was covered by the

16  new patent and that royalties were therefore due.  Id.  The

17  petitioner believed that its drug did not infringe the patent and,

18  as a result, royalties were not due.  Id.  Fearing an infringement

19  action, the petitioner nevertheless paid the demanded royalties

20  "under protest" and sought a declaratory judgment.  Id. at 122.

21       Here, as already noted, PTI's obligation to pay royalties is

22  not based on a finding of infringement.  Moreover, unlike in

23  Medimmune, it is not apparent that the '106 patent singularly

24  precludes PTI from distributing its wBGA products.  The

25  declarations of non-infringement and invalidity sought by PTI would

26  not necessarily enable it to sell its wBGA products without

27

28                                     8

**United States District Court**
For the Northern District of California

1   maintaining its license from Tessera.[4]  PTI has not shown that the

2   resolution of its allegations against the '106 patent would redress

3   any imminent injury and materially alter the status quo.

4        Even if PTI established an actual controversy, the Court, in

5   the exercise of its discretion, would decline to hear the case.

6   Tessera's suit in the Eastern District of Texas against PTI's

7   customers, which was filed in 2007, addresses the '106 patent.

8   However, that litigation is stayed pending the ITC proceedings.  If

9   an actual controversy existed between PTI and Tessera because of

10  this litigation, the interests of judicial efficiency would favor

11  hearing PTI's declaratory judgment action along with Tessera's

12  infringement suit.

13                              CONCLUSION

14       For the foregoing reasons, the Court GRANTS Tessera's Motion

15  to Dismiss.  (Docket No. 14.)  Tessera's objections are OVERRULED

16  as moot.  The case management conference scheduled for June 22,

17  2010 is VACATED.

18       IT IS SO ORDERED.

19  Dated: June 1, 2010

    _____
    CLAUDIA WILKEN
20  United States District Judge

21

22

23

24

---

25       [4] In an attempt to create an actual controversy, PTI asserted
    at the hearing that it would cancel its agreement with Tessera if
26  the '106 patent were deemed invalid or not infringed.  Notably, PTI
    did not take this position in its papers and, although Mr. Tsai
27  could have stated as much in his declaration, he did not do so.

28